UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRENT J. ARNETT and AUTUMN M. ARNETT, husband and wife; DANIEL K. MOREHOUSE and JODEAN MOREHOUSE, husband and wife,,<br><br>Plaintiffs,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), a Delaware corporation; SBMC MORTGAGE, a California general partnership; LANDAMERICA TRANSNATION TITLE, an unknown business entity; FEDERAL HOME LOAN MORTGAGE CORPORATION (FREDDIE MAC); U.S. BANK, N.A. (USB), a Minnesota banking entity; NORTHWEST TRUSTEE SERVICES, INC. (NWTS), a Washington corporation; BISHOP, WHITE, MARSHALL & WEIBEL, P.S., a Washington Corporation; JOHN DOES NOS. 1-50,<br><br>Defendants. | CASE NO. 14-cv-05298-BJR<br><br>MEMORANDUM OPINION & ORDER GRANTING DEFENDANT BISHOP, WHITE, MARSHALL & WEIBEL'S MOTION FOR SUMMARY JUDGMENT [14] AND GRANTING DEFENDANTS FEDERAL HOME LOAN MORTGAGE CORPORATION, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND U.S. BANK, N.A.'S MOTION FOR JOINDER [16] AND MOTION FOR SUMMARY JUDGMENT [21] |

|     |     |
| --- | --- |
| 1   | Before the Court are Defendant Bishop, White, Marshall & Weibel's ("BWMW") |
| 2   | Motion for Summary Judgment [14] and Defendants Federal Home Loan Mortgage Corporation |
| 3   | ("Freddie Mac"), Mortgage Electronic Registration Systems ("MERS"), and U.S. Bank, N.A.'s |
| 4   | ("USB") (collectively, "U.S. Bank Defendants") Motion for Joinder [16] and Motion for |
| 5   | Summary Judgment [21]. The motions are fully briefed and ripe for resolution. Having |
| 6   | considered the parties' arguments, pleadings, and relevant case law, the Court finds that a |
| 7   | hearing is unnecessary. For the reasons set forth below, Defendants' Motions are **GRANTED**. |

## I. BACKGROUND

This case concerns property located at 1403 8th Avenue, Milton, Pierce County, Washington 98354 ("the Property").[1] On June 11, 2007, Plaintiffs Daniel Morehouse, Autumn Arnett, and Brent Arnett signed a Promissory Note ("Note") promising to pay $370,000, plus interest, to the holder of the Note, at that time Defendant SBMC Mortgage ("SBMC"). Affidavit of Helen Jene Patton [22] ("Patton Aff."), Ex. A (Note). Also on June 11, 2007, the Plaintiffs executed a Deed of Trust ("DOT") securing the repayment of the Note with an interest in the Property. Patton Aff., Ex. D (Deed of Trust). The DOT listed the lender as SBMC, the trustee as Defendant Landamerica Transnation Title, and Defendant MERS as the "nominee for the Lender and Lender's successors and assigns," and beneficiary under the DOT. *Id.* Also on June 11, 2007, Plaintiff JoDean Morehouse, who did not sign the Note but did sign the DOT, executed a quit claim deed ceding all interest in the Property to her husband, Plaintiff Daniel K. Morehouse. Patton Aff., Ex. E (Quit Claim Deed).

---

[1] The legal description for the property is "Lot "C" of City of Milton Short Plat No. 9506080289, as recorded June 8, 1995 under Recording No. 9506080289, records of Pierce County Auditor; Situate in the City of Milton, County of Pierce, State of Washington." Notice of Removal [1], Ex. 1 (Complaint) at ¶ 1.

On July 3, 2007, prior to collecting any mortgage payments, Defendant SBMC sent Plaintiffs a letter indicating that it had assigned, transferred, or sold the servicing rights of the loan to Defendant USB. Patton Aff., Ex. G. Accordingly, all payments were to be made to USB. *Id.* USB took physical possession of the Note on June 27, 2007, and has had physical possession of the Note since that date. Patton Aff. at ¶ 8.

Two years later, in July 2009, Plaintiffs fell behind on their mortgage payments. Patton Aff at ¶ 9. According to Plaintiff Brent Arnett, in August 2009 the Plaintiffs sought a loan modification from U.S. Bank, N.A. and were told that to receive a modification, they needed to "be two monthly payments behind." Declaration of Brent Arnett [18] at ¶ 6. Plaintiffs monthly payments were slightly lowered during a "trial period," and Plaintiffs were told the modification process would take ninety days. *Id.* Plaintiff Arnett declares that the Plaintiffs went through the loan modification process for two years, made at least 100 calls to U.S. Bank and to Freddie Mac, who they were told owned the loan, and finally were denied "because we made ten dollars per month over the limit for a loan modification!" *Id.* Plaintiffs allege they were "treated unfairly by U.S. Bank, N.A." *Id.* at ¶ 5.

On May 23, 2011, USB, through its agent Defendant Northwest Trustee Services, Inc., sent the Plaintiffs a Notice of Default ("NOD") indicating that they were behind on their payments by $44,590.96. Patton Aff., Ex. H (NOD). The NOD identified USB as the owner of the Note, as well as the loan servicer for the loan. *Id.* On August 25, 2011, MERS assigned its interest as beneficiary under the DOT to USB. Patton Aff., Ex. K. On August 25, 2011, USB appointed Northwest Trustee Services, Inc., as the successor trustee under the DOT. Patton Aff., Ex. J. On March 1, 2013, USB substituted Defendant BWMW as substitute trustee. Patton Aff., Ex. P. On May 31, 2013, BWMW served a NOD on Plaintiff stating that they were in default in

the amount of $128,951.40. Patton Aff., Ex. Q. On September 25, 2013, BWMW notified Plaintiff of an impending trustee's sale. Patton Aff., Ex. R.

Plaintiffs commenced the instant litigation on January 22, 2014, in Pierce County Superior Court. Defendants timely removed to this Court on April 7, 2014.

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

## III.  ANALYSIS

Plaintiffs' theory of the case is set out in their Complaint. Plaintiffs note that the original DOT named MERS as the "beneficiary" of the DOT, purportedly vested with the power to appoint successor trustees. Plaintiffs correctly point out that, according to Washington law, an entity that is designated as a beneficiary by a security instrument but that "never held the promissory note . . . is not a lawful beneficiary." *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 42 (Wash. 2012). Plaintiffs argue that, because MERS never held the Note, they are not a lawful beneficiary and thus could not appoint a successor trustee to initiate foreclosure against

Plaintiffs. From this point, Plaintiffs argue that any subsequent beneficiary, namely USB, "ha[s] no standing to proceed. This fact destroys standing for any of the other codefendants, since their alleged claims flow from the authority—**lack of authority**—of the original 'beneficiary,' MERS." Compl. ¶ 4.

Plaintiffs bring suit for violation of Washington's Deed Trust Act, RCW §§ 61.24, *et seq.*, Washington's Consumer Protection Act, RCW §§ 19.86, *et seq.*, slander of title, quiet title, and fraud. Plaintiffs seek damages, declaratory relief, and injunctive relief. Compl. at 12-17.

### A. Defendant Bishop, White, Marshall and Weibel's Motion for Summary Judgment

Defendant BWMW moves for summary judgment as to all claims by Plaintiffs. BWMW is the present trustee of the Property. BWMW was appointed substitute trustee on March 1, 2013, by Defendant USB. Patton Aff., Ex. P. On May 31, 2013, BWMW served a Notice of Default on Plaintiff stating that they were in default in the amount of $128,951.40. Patton Aff., Ex. Q. On September 25, 2013, BWMW notified Plaintiff of an impending trustee's sale. Patton Aff., Ex. R.

Plaintiffs' claims against BWMW are loosely articulated in the Complaint: "Defendant [BWMW] . . . claim[s] to have authority to issue a Notice of Sale in this action . . . despite having no standing to do so because of the failure of the putative beneficiary of any deed of trust to have standing to appoint [BWMW] as a subsequent trustee with power of sale . . . [Defendant] has a duty to the plaintiffs to ensure that the Deeds of Trust Act ("DTA") is strictly observed in nonjudicial foreclosure actions. They have failed to do so in this case . . . ." Compl. at 4-5.

*1. Plaintiffs' Deed of Trust Act Claim Against BWMW*

Washington's Deed of Trust Act requires that, before issuing a notice of trustee's sale, the trustee must "have proof that the beneficiary is the owner of any promissory note or other

1  obligation secured by the deed of trust." RCW § 61.24.030(7)(a). "A declaration by the
2  beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of
3  the promissory note or other obligation secured by the deed of trust shall be sufficient proof as
4  required under this subsection" "[u]nless the trustee has violated his or her duty under RCW §
5  61.24.010(4). RCW § 61.24.030(7)(a) and (b). RCW § 61.24.010(4) simply states that the
6  trustee "has a duty of good faith to the borrower, beneficiary, and grantor." The Deed of Trust
7  Act defines "beneficiary" as "the holder of the instrument or document evidencing the
8  obligations secured by the deed of trust," i.e., the Note.

9  Pursuant to RCW § 61.24.030(7)(a), Defendant BWMW received a declaration from U.S.
10  Bank, N.A., stating that U.S. Bank was the actual holder of the promissory Note. Declaration of
11  Melanie Sattler [15] ("Sattler Decl."), Ex. 3 (Declaration). The Declaration is dated July 29,
12  2011, and thus was given to BWMW prior to its issuance of a Notice of Trustee's Sale on
13  September 25, 2013. *Id.*; Sattler Decl., Ex. 2 (Notice of Trustee's Sale). Accordingly, BWMW
14  had sufficient proof, under the Deed of Trust Act, that U.S. Bank, N.A. was the actual holder of
15  the promissory Note, and was entitled to rely on U.S. Bank's declaration.

16  Plaintiffs make a number of arguments concerning U.S. Bank's ability to appoint a
17  successor trustee; these arguments are discussed *infra* pp. 9-11. However, these arguments are
18  more properly directed at the other defendants and are not relevant to whether BWMW complied
19  with its duties as trustee under the Deed of Trust Act. BWMW was entitled to rely on USB's
20  declaration that it was the holder of the Note. The only exception to this entitlement would be if
21  BWMW violated its duty of good faith. RCW §§ 61.24.030(7) and 61.24.010(4). Plaintiffs
22  present no facts or argument that would demonstrate that BWMW violated its duty of good faith.
23  The only portion of Plaintiffs' brief that appears to tangentially address this subject is the
24

1  following sentence: "BMW [sic] has also failed its duty to remain neutral and complete its due
2  diligence to protect the plaintiffs from harm by these violations of the DTA." Pls.' Resp. [17] to
3  Def.'s Mot. for Summ. J. at 8.  However, Plaintiffs do not present any evidence or argument
4  regarding *how* Defendant failed in its duty.  Plaintiffs seem to imply that BWMW's acceptance
5  of USB's declaration that it was the holder of the Note is, in itself, a violation of the duty of good
6  faith.  Accepting this argument, however, would make RCW §§ 61.24.030(7) and 61.24.010(4)
7  nonsensical, as a trustee would *never* be entitled to accept a declaration as proof that the
8  declarant has a promissory note because such acceptance would, taking Plaintiffs' argument,
9  violate the duty of good faith.  Furthermore, Plaintiffs' argument contradicts the plain wording of
10 RCW §§ 61.24.030(7) and 61.24.010(4).  Accordingly, BWMW is entitled to summary judgment
11 as to Plaintiffs' claims that BWMW violated its duty under the Deed of Trust Act.

12              2.  *Plaintiffs' CPA Claim Against BWMW*

13 
14    To establish a violation of the CPA, a plaintiff must present evidence of "an unfair or
15 deceptive act or practice . . . that . . . had the *capacity* to deceive a substantial portion of the
16 public." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535
17 (Wash. 1986).  Plaintiffs do not allege, or present evidence, that BWMW has engaged in an
18 unfair or deceptive act or practice with the capacity to deceive a substantial portion of the public.
19 Accordingly, Plaintiffs' CPA claim fails.

20              3.  *Plaintiffs' Slander of Title Claim Against BWMW*

21 
22    To establish a slander of title claim, a plaintiff must demonstrate that a defendant has spoken
23 words that (1) are false; (2) have been maliciously published; (3) are spoken with reference to
24 some pending sale of the property; (4) resulted in pecuniary loss or injury to the claimant; and

(5) were such as to defeat the plaintiff's title.  *Schwab v. City of Seattle*, 826 P.2d 1089, 1092 (Wash. App. 1992) (citing *Pay 'N Save Corp. v. Eads*, 767 P.2d 592 (Wash. App. 1989)).  Plaintiffs present no evidence that BMWM maliciously published false words with reference to the pending sale or purchase of property, and further do not present evidence that BMWM caused them pecuniary loss or injury by defeating Plaintiffs' title.  As such, Plaintiffs' slander of title claim fails.

### 4. *Plaintiffs' Fraud Claim Against BWMW*

A claim of fraud requires that a plaintiff put forth evidence of "(1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) [the speaker's] intent that [the fact] should be acted upon by the person to whom it is made, (6) ignorance of [the fact's] falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) [the right of the person] to rely on it, and (9) [the person's] consequent damage."  *Cedell v. Farmers Ins. Co. of Washington*, 237 P.3d 309, 314-15 (Wash. App. 2010), *aff'd in part, rev'd in part on other grounds*, 295 P.3d 239 (Wash. 2013).  Plaintiffs present no evidence that BWMW knowingly presented a false, material fact from which Plaintiffs suffered damage.  Accordingly, Plaintiffs' fraud claim fails.

### 5. *Plaintiffs' Claim Against BWMW to Quiet Title*

A claim for quiet tile is "designed to resolve competing claims of ownership . . . of real property."  *Kobza v. Tripp*, 18 P.3d 621, 623-24 (Wash. App. 2001).  Here, BWMW makes no claim to ownership of the property at issue.  As such, Plaintiffs' quiet title claim fails.

As Plaintiffs have no valid claims as to Defendant BWMW, the Court GRANTS BWMW's Motion for Summary Judgment.

### B. Defendants MERS, Freddie Mac, and U.S. Bank, N.A.'s Motion for Joinder

U.S. Bank Defendants move to join in Defendant BWMW's Motion for Summary Judgment. The motion is unopposed and GRANTED.

### C. Defendants MERS, Freddie Mac, and U.S. Bank, N.A.'s Motion for Summary Judgment

*1. Defendants' Motion to Dismiss Plaintiff JoDean Morehouse*

Defendants first argue that Plaintiff JoDean Morehouse is not a proper Plaintiff. While JoDean Morehouse did sign the Deed of Trust, Patton Aff., Ex. D, she did not sign the Note, Patton Aff., Ex. A. On June 11, 2007, JoDean Morehouse then executed a Quit Claim Deed transferring her interest in the Property to "Daniel Kerr Morehouse, married as his separate property." Patton Aff., Ex. E. Accordingly, Defendants argue that JoDean Morehouse lacks any interest in the Property. Plaintiffs do not respond to this argument.

Defendants are correct. Plaintiff JoDean Morehouse has no interest in the Property at issue, and therefore lacks standing. Accordingly, she is dismissed as a plaintiff.

*2. Plaintiffs' Claims Concerning U.S. Bank's Beneficiary Status*

As noted above, Plaintiffs argue that USB lacked the ability to appoint Defendant BWMW as successor trustee. MERS was listed as the "nominee for Lender and Lender's successors and assigns [and] the beneficiary under this Security Instrument" in the Deed of Trust. Patton Aff., Ex. D. at ¶ E. Plaintiffs present an Assignment of Deed of Trust, recorded on August 25, 2011, in which MERS "as Beneficiary, hereby . . . assigns and transfers to U.S. Bank National Association . . . all beneficial interest under [the Deed of Trust] . . . ." Patton Aff., Ex. K. Plaintiffs correctly point out that, according to Washington law, an entity that is designated

as a beneficiary but that "never held the promissory note . . . is not a lawful beneficiary." *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 42 (Wash. 2012). Plaintiffs argue that, because Defendant MERS never held the Note, they are not, and were never, a lawful beneficiary of the DOT and thus could not appoint a successor trustee to initiate foreclosure against Plaintiffs. Moreover, because MER never held the Note, it could not transfer any "interest" as beneficiary to USB.

Plaintiffs' argument is correct as far as MERS' inability to function as a beneficiary under Washington law. However, USB points out that the propriety of its appointment of BWMW as successor trustee does not derive from MERS' transfer of MERS' beneficiary status. Rather, USB's authority derives from its status as the holder of the promissory Note. Plaintiffs fail to grapple in any meaningful way with this argument. Nor could they.

USB has provided evidence, in the form of the affidavit of Heather Jene Patton, that USB took possession of the Note on June 27, 2007, and has been in physical possession of the Note since that date. Patton Aff. at ¶ 8. Also in evidence is a July 3, 2007, letter sent by Defendant SBMC to Plaintiffs indicating that SBMC had assigned, transferred, or sold the servicing rights of the loan to USB as of August 1, 2007. Patton Aff., Ex. G (Letter from SBMC). Prior to said transfer, SBMC sent Plaintiffs a notice that it had a history of assigning or transferring 100% of its mortgages; Plaintiffs signed and acknowledged this notice. Patton Aff., Ex. F (Notice). Plaintiffs appear to have made payment on their mortgage to USB for the better part of two years, until they fell behind on payment in July of 2009. Patton Aff. at ¶ 9.

The Note itself contemplates such a transfer. Paragraph 1 of the Note, entitled "Borrower's Promise to Pay," states that "I understand that the Lender may transfer this note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments

under this Note is called the "Note Holder." Patton Aff., Ex. A (Note). The Note also states, in Paragraph 10, that a separate Deed of Trust protects the Note Holder from loss if the borrower does repay the loan. *Id.* The Deed of Trust also contains language contemplating a transfer. Paragraph 20 of the Deed of Trust states that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times . . . ." Patton Aff., Ex. D (Deed of Trust). Plaintiffs have presented no evidence to contradict the evidence in the record that SBMC transferred the Note to USB and that USB has been the holder of the Note since June 27, 2007.

As the holder of the Note, USB is entitled to appoint a successor trustee to foreclose on the property secured by the Deed of Trust. *See* Patton Aff., Ex. D (Deed of Trust) at ¶ 24 ("Substitute Trustee. In accordance with Applicable Law, Lender [i.e., the holder of the Note] may from time to time appoint a successor trustee to any Trustee appointed hereunder . . . the successor trustee shall succeed to all the title, power, and duties conferred upon the Trustee herein . . . "). This is in accordance with Washington law. *See Bain*, 285 P.3d at 36 (holding that "only the actual holder of the promissory note or other instrument evidencing the obligation may . . . appoint a trustee to proceed with a nonjudicial foreclosure . . . "; *See also Myers v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 678148, at * 3 (W.D. Wash. Feb. 24, 2012) (finding that a party holding the note is empowered to appoint a trustee because of its possession of the note, and not because of any assignment of beneficiary status); *In re Jacobsen*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) (holding that "[i]n Washington, only the holder of the obligation secured by the deed of trust is entitled to foreclose . . . [t]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter"); *Fidelity & Deposit Co. of Maryland v. Ticor Title Ins. Co.*, 943 P.2d 710, 713 (Wash. App. 1997) (holding that the security instrument follows the debt, i.e., note). Indeed, the Deed of Trust Act itself

defines "Beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust," i.e., the Note. RCW § 61.24.005(2).[2] Here, USB has held the Note since June 27, 2007, having been transferred the Note by the original lender, SBMC. As such, USB was entitled, as holder of the Note, to appoint BWMW as successor trustee on March 1, 2013. Patton Aff., Ex. P (Appointment of Successor Trustee).

Plaintiffs briefly argue that "the investigation of the loan origination shows U.S. Bank, N.A. as merely the loan servicer and the investor (funding entity) was FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac")." Pls.' Resp. [25] to Defs.' M. for Summ. J. at 4. Plaintiffs appear to be confused as to Freddie Mac's role in "funding" the underlying loan and imply, without specifically arguing, that this "funding" implies ownership or possession of the Note.[3] However, Plaintiffs have presented no evidence that creates a genuine issue of material fact as to USB's possession of the Note.

### 3. *Plaintiffs' CPA Claim Against U.S. Bank Defendants*

Violation of the CPA requires "an unfair or deceptive act or practice . . . which affects the public interest . . . a showing of injury to plaintiff in his or her business or property . . . [and] a

---

[2] This definition of "Beneficiary" was the statutory language relied on by the Washington Supreme Court in *Bain* in reaching its conclusion that, because in that case, it never held the Note, MERS could not be the beneficiary of the security instrument.

[3] This funding mechanism is explained in an FAQ publicly available on the Federal Housing Finance Agency's website: "Do Fannie Mae and Freddie Mac make loans directly to home buyers? No. Fannie Mae [sic] Freddie Mac support the nation's housing finance system through the secondary mortgage market and do not make loans directly to borrowers; rather, banks, credit unions, and other retail financial institutions originate home loans to borrowers. Generally, lenders do not retain the mortgages they originate as assets on their own books. Instead, they often sell conventional conforming mortgage loans soon after origination to Fannie Mae or Freddie Mac." Federal Housing Finance Agency, *Frequently Asked Questions* (Oct. 9, 2014, 12:23 PM), at http://fhfaoig.gov/LearnMore/FAQ#FannieMaeFreddieMac3.

causal link . . . between the unfair or deceptive act complained of any the injury suffered." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Plaintiffs do not allege or present evidence of an unfair or deceptive act or practice on the part USB or Freddie Mac. As to MERS, Plaintiffs appear to argue that MERS' assignment of its "beneficiary" interests to USB was an "unfair or deceptive act or practice" because, pursuant to Washington law, MERS was not a legitimate beneficiary and as such had no "interests" to assign. However, Plaintiffs have failed to establish that MERS' action had a "causal link" to any injury they have suffered or are likely to suffer, such as foreclosure on their home. This is because the power to appoint a trustee to initiate foreclosure stems from USB's status as holder of the promissory Note, not from any wrongful assignment by MERS. Plaintiffs therefore cannot establish a causal link between wrongful action by MERS and injury to themselves. As such, Plaintiffs' CPA claim fails as to U.S. Bank Defendants.

*4. Plaintiffs' Slander of Title Claim Against U.S. Bank Defendants*

To establish a slander of title claim, a plaintiff demonstrate that a defendant has spoken words that (1) are false; (2) have been maliciously published; (3) are spoken with reference to some pending sale of the property; (4) resulted in pecuniary loss or injury to the claimant; and (5) were such as to defeat the plaintiff's title. *Schwab v. City of Seattle*, 826 P.2d 1089, 1092 (Wash. App. 1992) (citing *Pay 'N Save Corp. v. Eads*, 767 P.2d 592 (Wash. App. 1989)). Plaintiffs present no evidence that U.S. Bank Defendants have maliciously published false words with reference to the pending sale or purchase of the Property. As such, Plaintiffs' slander of title claim fails.

*5. Plaintiffs' Fraud Claim Against U.S. Bank Defendants*

1    A claim of fraud requires that a plaintiff put forth evidence of "(1) a representation of an
2 existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or
3 ignorance of its truth, (5) [the speaker's] intent that [the fact] should be acted upon by the person
4 to whom it is made, (6) ignorance of [the fact's] falsity on the part of the person to whom it is
5 made, (7) the latter's reliance on the truth of the representation, (8) [the right of the person] to
6 rely on it, and (9) [the person's] consequent damage." *Cedell v. Farmers Ins. Co. of Washington*,
7 237 P.3d 309, 314-15 (Wash. App. 2010), *aff'd in part, rev'd in part on other grounds*, 295 P.3d
8 239 (Wash. 2013). For the reasons discussed above, Plaintiffs have failed to present evidence
9 that U.S. Bank Defendants presented a false, material fact from which Plaintiffs suffered injury.
10 Accordingly, Plaintiffs' fraud claim fails.

11              *6.   Plaintiffs' Claim to Quiet Title Against U.S. Bank Defendants*

12    Finally, a claim for quiet tile is "designed to resolve competing claims of ownership . . .
13 of real property." *Kobza v. Tripp*, 18 P.3d 621, 623-24 (Wash. App. 2001). RCW § 7.28.300
14 outlines when a plaintiff may quiet title against a mortgage or deed of trust: "The record owner
15 of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust
16 on the real estate where an action to foreclose such mortgage or deed of trust would be barred by
17 the statute of limitations . . . ." The Note signed by Plaintiffs states that the date of maturity of
18 the loan is July 1, 2047. Patton Aff., Ex. A at ¶ 3. RCW § 4.16.040(1) imposes a six-year statute
19 of limitations on "promissory notes and deeds of trust." This six-year statute of limitations
20 begins when the note becomes due. *See Westar Funding, Inc. v. Sorrels*, 239 P.3d 1109, 1113
21 (Wash. App. 2010) (finding that the statute of limitations on a 1992 note that came due in 1994
22 expired six years after the note became due, i.e., in 2000). Accordingly, the statute of limitations
23 has not run on the Note, and Plaintiffs have no basis on which to quiet title.
24

Because Plaintiffs have failed to support any of their claims against U.S. Bank Defendants, the Courts GRANTS Defendants Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, and U.S. Bank, N.A.'s Motion for Summary Judgment.

### IV. Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that:

(1) Defendant Bishop, White, Marshall & Weibel's Motion for Summary Judgment [14] is **GRANTED**.

(2) Defendants Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, and U.S. Bank, N.A.'s Motion for Joinder [16] is **GRANTED**.

(3) Defendants Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, and U.S. Bank, N.A.'s Motion for Summary Judgment [21] is **GRANTED**.

(4) Plaintiff JoDean Morehouse is **DISMISSED** from this case.

**SO ORDERED**.

Dated: October 10, 2014

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE